**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: _____**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THOMAS GITY, SR.,** | ) |
| | ) |
| **Defendant, and** | ) |
| | ) |
| **THOMAS GITY, JR.** | ) |
| **TREASURE COAST PROPERTY** | ) |
| **ENTERPRISES, LLC** | ) |
| | ) |
| **Relief Defendants.** | ) |
| _____ | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission alleges:

**I.      INTRODUCTION**

1.   From at least January 2018 to at least January 2019, Thomas J. Gity, Sr. ("Gity") received at least $6.8 million from at least eighteen investors, who invested on the basis of his representations that he was a highly-profitable digital asset trader and had never lost money during a trading day.

2.   Gity, a convicted felon with no known professional financial industry experience, made material misrepresentations to investors about the success of his trading, the risks of investment, and ultimately, the cause of investor losses.  Based on Gity's false and misleading statements, investors believed that Gity pooled investor funds in trading accounts over which he

exercised exclusive control, managed digital assets worth in excess of $100 million and achieved weekly returns as high as 46.83% with no market risks.

3.    In reality, of the $6.8 million that Gity received from investors, less than $970,000 was deposited in digital asset trading accounts.  The limited trading that Gity did perform did not achieve the profits he claimed to generate.

4.    Gity used the digital asset trading accounts that he controlled to funnel investor funds to his own personal bank account and bank accounts controlled by his son, Thomas Gity, Jr. ("Gity, Jr.").  The balance of investor funds that Gity did not transfer to digital asset trading accounts was misappropriated or distributed to investors in Ponzi-like fashion.

5.    Gity spent investor funds on personal expenses, including for gambling, and to make Ponzi-like distributions to investors.  To conceal his fraudulent scheme, Gity falsely represented that the trading account, which he falsely claimed contained in excess of $100 million in value, was no longer accessible to him because, among other reasons, it was disabled by the digital asset firm where he claimed the account was held.

6.    Relief Defendants Gity, Jr. and Treasure Coast Property Enterprises, LLC ("Treasure Coast"), a company which Gity, Jr. controlled, received investor assets and proceeds of Gity's securities violations without any legitimate entitlement to the funds.

7.    Through his conduct, Gity violated the anti-fraud provisions of the federal securities laws.

8.    Based on the egregious nature of Gity's violations, he has shown he will violate the law, including further dissipating investor funds, unless the Court grants the injunctive and other relief the Commission seeks against him.

## II.   DEFENDANT

9.   Gity is a resident of Port St. Lucie, Florida and is retired.  Before he retired, Gity was the principal of Booster Club Card, Inc., which purportedly provides fundraising services to schools and other organizations.  He has never been registered with the Commission in any capacity.  He has two Rhode Island felony convictions:  in 1994, for racketeering, operating an organized crime gambling business, and conspiracy, for which he served time in prison, and in 2000, for embezzlement, for which he received 10 years' probation.  He has not been licensed or registered with the Commission, and has not been associated with any registered entity.  He has no known professional financial industry experience.

## III.   RELIEF DEFENDANTS

10.   Gity, Jr. is a resident of Port St. Lucie, Florida and is currently the principal of Booster Club Card, Inc.  He has never been registered with the Commission in any capacity.  He is the titleholder of two houses purchased with investor funds.

11.   Treasure Coast is a Florida limited liability company, with its principal place of business in Port St. Lucie, Florida.  Gity, Jr. is the only officer of the company.  Treasure Coast is the titleholder of three houses purchased with investor funds.

## IV.   JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), (e) and 78aa(a).

13.   This Court has personal jurisdiction over Gity, and venue is proper in the Southern District of Florida, because many of Gity's acts and transactions constituting violations of the

3

Securities Act and Exchange Act occurred in the Southern District of Florida.  In addition, at all times relevant to the Complaint, Gity and Gity, Jr. resided in the Southern District of Florida, and Treasure Coast had its principal place of business in this District.

14. In connection with the conduct alleged in this Complaint, Gity, directly or indirectly, singly or in concert with others, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, or of the mails.

## V.   GITY'S ACTS IN VIOLATION OF THE SECURITIES LAWS

### A.  The Securities Transactions

15. In or around January 2018, Gity told an acquaintance (the "Investor") that he had learned how to successfully trade digital assets, that he had never lost money during a trading day, and that he could triple her principal investment.  Based on these representations, Investor decided to invest.

16. Gity and Investor reached an oral agreement under which Gity agreed to use his purported digital asset expertise to trade Investor's funds in digital assets.  They agreed that Gity would keep 20% of all trading profits and Investor would keep the remainder.  In January 2018, Investor made her first investment of $12,000, which Gity deposited into his personal bank account.

17. Gity updated Investor at least weekly on the purported performance of her investment.  Based on Gity's representations, Investor believed that Gity's trading generated massive profits.  In turn, Investor introduced Gity to multiple new investors between January 2018 and December 2018.

18.   Gity entered into oral agreements with some investors and entered into a written "Joint Venture Agreement" with others under which he agreed to use investor funds for the "purpose of completing Bitcoin transactions."  Under these agreements, investors were entitled to a percentage of the purported net profits (generally, between 50% and 80%) and Gity was entitled to the remainder.

19.   In the written agreements, Gity represented that "he has never had a day in his previous 2 years of trading Bitcoin that the account has closed negative for that day."  He also represented that "there is no risk to capital being invested as all trades have an automatic sell price at each buy in price."

20.   By December 2018, Gity had received approximately $6.8 million from at least eighteen investors.  Investors relied on Gity's claimed expertise in digital asset trading and believed that any investor profits would come solely from Gity's ability to generate returns.

21.   The oral and written agreements that Gity entered into with investors are "investment contracts," and therefore securities, within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act, 15 U.S.C. §§ 77b(a)(1), 78c(a)(10).

**B.  The Material Misrepresentations and Omissions**

22.   Based on Gity's representations, investors believed that Gity's trading was enormously profitable.  At least monthly and often weekly, Gity prepared for certain investors what he described as "portfolio statements."   These statements displayed, among other information, the purported U.S. dollar value of digital assets that he traded for the investor and the purported U.S. dollar value of the combined digital assets that he managed for all investors, including himself.

23.   Gity created the portfolio statements by using a mobile phone application called Coin Stats.  Specifically, Gity manually entered purported balance and profit information from the digital asset trading accounts into the Coin Stats application and then took screenshots ("Screenshots") on his mobile phone of the portfolio statements, which displayed the information he entered.  He sent the Screenshots directly to investors via text message or, in some cases, asked Investor to do so on his behalf.  An example of a Screenshot is attached as Exhibit A.

24.   The information that Gity conveyed to investors in the Screenshots was fabricated. Gity represented to investors that the assets in his trading account increased from $9,378,585 on October 14, 2018 to $100,921,738 on or around January 6, 2019, and that his trading achieved weekly trading profits as high as 46.83%.  Although the Screenshot showing the $100,921,738 balance is dated January 6, 2019, Gity would later claim that he lost access to the trading account on December 28, 2019.

25.   Gity generated the misleading Screenshots to deceive investors into believing that his trading achieved extraordinary profits and to induce additional investments.  In turn, investors invested on the basis of the fabricated profits claimed by Gity.

26.   In reality, less than $970,000 of the approximately $6.8 million that Gity received from investors was transferred to trading accounts, and the profits that Gity claimed were fictitious.

27.   Investors believed, and Gity testified, that he held or traded investor assets on three digital asset platforms – Coinbase, Binance and BitMEX.  But, in Gity's Coinbase account, the net balance between January 2018 and January 2019 increased by only $10,136 and in his Binance account, the net balance between January 2018 and December 2018 decreased by approximately $170,000.  Gity has produced no documentation that he held any account at BitMEX, let alone an account with a $100 million balance.  Gity testified that he does not recalling receiving any

documents that would prove that he opened a BitMEX account, except for a welcome email, which he "probably" deleted.

28.   Gity also misled investors about the risks of investing in his trading venture. During the Relevant Period, Gity entered into "Joint Venture Agreements" with investors under which he represented that "there is no risk in the capital being invested as all trades have an automatic sell price at each buy in price," and that as a result, "the downside of the investor's capital is always protected."

29.   In fact, there were enormous risks to investor capital.  Gity used the digital asset trading accounts that he controlled to funnel investor funds to his own personal bank account and bank accounts controlled by Gity, Jr.  Of the approximately $6.8 million in capital invested, Gity misappropriated at least $4.2 million and distributed the remaining $2.6 million to investors in Ponzi-like fashion.

30.   Although Gity did place some orders in his digital asset trading accounts, those orders did not always have an automatic sell price.  As a result, the downside was not "always protected."  Gity's misrepresentations were intended to induce additional investments and to keep existing investors from requesting redemptions.

31.   Gity's scheme began to fall apart in December 2018, when several investors elected to take a distribution of around $5 million.  Gity told the investors, through Investor as intermediary, that he withdrew the requested funds and would disburse them during the first few days of January 2019.  When the investors did not receive the distribution, they, along with Investor, attempted to contact Gity by phone and through social media.  He did not respond, and by all appearances, had absconded.

32.   On or around January 7, 2019, Gity sent the investors a letter in which he attempted to lull them.  The letter explained that "[s]everal months ago we moved all investments to the Bitmex platform."  Gity claimed that "[t]rading on Bitmex continued as normal until 2 weeks ago, when [he] discovered that [he] was unable to log into the account containing [investor] funds." Gity claimed that the login failure could be the result of:  (1) "some harmless error on the Bitmex platform, perhaps complicated by the intervening holidays;" (2) "[t]he account and/or Bitmex [having] been hacked by an outside source;" or, (3) "action of Bitmex itself" to close the account. In the letter, Gity claimed that he "made every effort to discover the cause of this issue, but to date" has not been successful.

33.   These were lies.  Gity has not produced documentation showing that he has taken any steps whatsoever to recover the investor funds, which according to Gity, were worth in excess of $100 million on or around January 6, 2019.  Neither has Gity produced any documentation that he even opened an account at BitMEX.  The digital asset and bank account records produced to the Commission do not show any transfers of fiat currency or digital assets to any account at BitMEX.  For its part, BitMEX was unable to find any wallets on its platform with a balance above $90 million during the time period from December 25, 2018 to January 6, 2019.  The cause of the investor losses was not BitMEX or hackers, as his letter claimed, but Gity himself.

### C.  The Misappropriation of Investor Funds

34. Gity misappropriated at least $4.2 million of the approximately $6.8 million invested to personal expenses, including gambling, and distributed the remaining $2.6 million to investors in Ponzi-like fashion.  Of the $4.2 million that Gity misappropriated, he transferred approximately $1.8 million to accounts controlled by Gity, Jr.  Gity, Jr. used the investor proceeds to, among other things, purchase five houses – two in his name and three in the name of Treasure

Coast – in Port St. Lucie, Florida in late 2018 and early 2019.  An associate of Gity, Jr. purchased a sixth house in Port St. Lucie, Florida with investor funds, and subsequently transferred it to Gity via a quitclaim deed.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

35.   The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

36.   From at least January 2018 to at least January 2019, Gity, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

37.   By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT II

### VIOLATION OF SECTION 17(a)(2) OF THE SECURITIES ACT

38.   The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

39.   From at least January 2018 to at least January 2019, Gity, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

40.   By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### COUNT III

### VIOLATION OF SECTION 17(a)(3) OF THE SECURITIES ACT

41.   The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

42.   From at least January 2018 to at least January 2019, Gity, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

43.   By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

### COUNT IV

### VIOLATION OF SECTION 10(b) AND RULE 10b-5(a) OF THE EXCHANGE ACT

44.   The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

45.   From at least January 2018 to at least January 2019, Gity directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

46.   By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

## COUNT V

**VIOLATION OF SECTION 10(b) AND RULE 10b-5(b) OF THE EXCHANGE ACT**

47. The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

48. From at least January 2018 to at least January 2019, Gity directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

49. By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT VI

**VIOLATION OF SECTION 10(b) AND RULE 10b-5(c) OF THE EXCHANGE ACT**

50. The Commission adopts by reference paragraphs 1 through 34 of this Complaint.

51. From at least January 2018 to at least January 2019, Gity directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

52. By reason of the foregoing Gity violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

VII.    **RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests the Court find that Gity committed the violations alleged and:

A.   **Permanent Injunctive Relief**

Issue a Permanent Injunction, enjoining Gity from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

B.   **Conduct Based Injunction**

Issue an injunction permanently enjoining Gity from participating, directly or indirectly, in any offering of securities, including any digital asset security, provided however that such injunction shall not prevent Gity from purchasing or selling securities for his own account.

C.   **Civil Money Penalty**

Issue an Order directing Gity to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

D.   **Disgorgement and Prejudgment Interest**

Issue an Order directing Gity, Gity, Jr. and Treasure Coast to disgorge all ill-gotten gains or proceeds received from investors as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

E.   **Asset Freeze**

Issue an Order freezing the assets of Gity, Gity, Jr. and Treasure Coast, until further Order of the Court.

**F.  <u>Records Preservation</u>**

Issue an Order requiring Gity, Gity Jr., and Treasure Coast to preserve any records related to the subject matter of this lawsuit that are in their custody or possession or subject to their control.

**G.  <u>Sworn Accounting</u>**

Issue an Order requiring directing Gity, Gity, Jr. and Treasure Coast to provide a sworn accounting of all assets and liabilities, including all monies and real properties directly or indirectly received from investors and all uses of investor funds.

**H.  <u>Further Relief</u>**

Grant such other and further relief as may be necessary and appropriate.

**I.  <u>Retention of Jurisdiction</u>**

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VIII.   DEMAND FOR JURY TRIAL

The Securities and Exchange Commission hereby demands a jury trial in this case.

Dated:  September 29, 2020                    Respectfully submitted,

                                    By:    */s/ Wilfredo Fernandez*
                                           Wilfredo Fernandez
                                           Fla. Bar No. 142859
                                           Senior Trial Counsel
                                           Direct Dial: (305) 982-6376
                                           Email: FernandezW@sec.gov

                                           Alice Sum
                                           Fla. Bar No. 354510
                                           Trial Counsel
                                           Direct Dial (305) 416-6293
                                           Email: SumAl@sec.gov

                                           Attorneys for Plaintiff
                                           Securities and Exchange Commission
                                           801 Brickell Ave., Suite 1950
                                           Miami, FL 33131
                                           Telephone: (305) 982-6300
                                           Facsimile: (305) 536-4154

        Of counsel:

        Alexander H. Charap
        Counsel
        Securities and Exchange Commission
        801 Brickell Ave., Suite 1950
        Miami, FL 33131

Exhibit A

